**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

MATTHEW GARGUS, individually
and on behalf of all others similarly situated,

Plaintiff,

v.

SIMILARWEB, INC.,

Defendant.

---

**CLASS ACTION COMPLAINT**

---

Plaintiff, Matthew Gargus, brings this class action complaint against Similarweb, Inc. ("Similarweb" or "Defendant"), a sales intelligence platform operating the publicly accessible and subscription-based directory available at similarweb.com. This action asserts violations of Colorado's "Prevention of Telemarketing Fraud Act" (PTFA), Colo. Rev. Stat. § 6-1-301, *et seq.* These allegations are grounded in counsel's investigation and are presented upon information and belief, except for those directly concerning Plaintiff, which are based on personal knowledge.

## INTRODUCTION

1. This complaint seeks redress for Similarweb's pervasive practice of compiling and commercially disseminating the cellular telephone numbers of Colorado residents without their explicit, affirmative consent. This conduct directly contravenes the letter and spirit of the PTFA, a vital piece of consumer legislation designed to protect the privacy of individuals, particularly regarding their mobile phone numbers, which are widely regarded as personal and private communication channels.

2. The Colorado General Assembly enacted the PTFA with a clear legislative declaration recognizing the rapid increase in commercial telephone solicitation and the unique risks and potential for abuse it presents. The legislature found that the "widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest." Colo. Rev. Stat. § 6-1-301.

3. To address these concerns, an amendment to the PTFA, HB05-1288, was signed into law on May 27, 2005, explicitly prohibiting the commercial listing of a cell phone number in a directory without the owner's permission, effective September 1, 2005. This amendment aimed

at protecting individuals from the misappropriation of their personal information and to uphold privacy in an increasingly digital world. Specifically, Colo. Rev. Stat. § 6-1-304(4) states:

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

4. This prohibition is designed to protect privacy. As former State Representative Mark Cloer,[1] a prime sponsor of HB05-1288,[2] stated in describing this new portion of the PFTA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important.[3]

5. Despite this clear statutory prohibition, Defendant operates the Similarweb platform, which functions as a data aggregator, openly collecting and listing personal information, including names. phone numbers, addresses, date of birth, age, and email addresses, without explicit consent. This data, sourced from various public records and third-party data brokers, is made readily available to anyone with internet access. Similarweb monetizes this personal data, including the cell phone numbers of Colorado residents, through its publicly accessible directory, thereby profiting from the unauthorized disclosure of private information.

6. This alleged conduct is not merely a technical violation; it exposes individuals to significant risks. The Federal Trade Commission ("FTC") has long warned about the potential dangers associated with data brokers, including the facilitation of harassment, stalking, identity

---

[1] *See* https://www.leg.state.co.us/clics2005a/directory.nsf

[2] *See* https://www.leg.state.co.us/clics2005a/csl.nsf/billcontainers/1BB0D3E00348AC6987256F90007C20C7/$FILE/1288_enr.pdf

[3] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916

theft, and vulnerability to fraudulent schemes.[4] Similarweb's readily accessible compilation of personal data, including cell phone numbers, creates a fertile ground for malicious actors to exploit this information for harmful purposes, such as scams, phishing, and doxxing. This is particularly concerning for vulnerable populations, such as the elderly, who are frequently targeted by telemarketing fraud.

7. Plaintiff brings this action to compel Similarweb to cease its unlawful practices, protect the privacy rights of Colorado cell phone users, and recover statutory damages provided by the PTFA.

## PARTIES

8. Plaintiff Matthew Gargus is, and has been at all relevant times, a resident of Boulder County, Colorado. Plaintiff's cellular telephone number was listed by Defendant in its directory, available at similarweb.com, for commercial purposes. Defendant never requested, and Plaintiff never provided, affirmative consent, through written, oral, or electronic means, for such listing. In fact, Plaintiff has no relationship with Defendant whatsoever and had no reasonable ability to discover Defendant's use of his personal information until shortly before filing this suit.

9. On information and belief, Defendant Similarweb, Inc. operates the website similarweb.com. Defendant Similarweb, Inc. is a corporation registered in Delaware that maintains its principal place of business in New York, New York.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed

---

[4] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf

class; (2) at least one member of the proposed Class has a different citizenship from the Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs:

a) On information and belief, the proposed Class contains thousands of Colorado residents if not many more. The proposed Class thus has more than 100 members.

b) At least one member of the proposed Class has different citizenship than Defendant, as Defendant is domiciled in Delaware and New York, while the proposed Class consists entirely of Colorado residents.

c) Plaintiff seeks statutory damages of at least $300 per class member, as well as disgorgement and restitution. Plaintiff also seeks attorneys' fees. Thus, this litigation exceeds the $5 million requirement under 28 U.S.C. § 1332(d).

11. This Court has personal jurisdiction over Defendant because it has purposefully directed their business activities toward Colorado residents. Through the operation of the similarweb.com website, Defendant routinely collects, publishes, and monetizes the personal information—including mobile phone numbers—of individuals known to reside in Colorado. Defendant's conduct is not passive: its Similarweb platform is interactive, regularly accessed by users in Colorado, and provides detailed personal data about Coloradans to third parties for a commercial purpose. By listing Colorado residents' personal information in a publicly accessible online directory, without consent, and for profit, Defendant has availed itself of the privilege of conducting business in Colorado and has established sufficient minimum contacts with the state. Additionally, Defendant's actions give rise to specific jurisdiction because the claims in this case directly relate to and arise from the unauthorized publication of Plaintiff's and other Colorado residents' information on Defendant's website. Defendant knew or should have known that

publishing such data would cause harm to individuals within Colorado. Exercising jurisdiction over Defendant in this forum comports with traditional notions of fair play and substantial justice and is consistent with due process under the U.S. Constitution.

12. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiff resides in Colorado and suffered the alleged injury—namely, the unauthorized and unlawful listing of his personal cellular phone number for commercial use—while residing in Colorado. Defendant published and monetized the personal data of Colorado residents through its website, with full awareness that its conduct could have legal and practical consequences within the state. As a result, Colorado is not only the locus of the harm, but also the forum with the most significant interest in adjudicating violations of its statutory privacy laws.

## <u>FACTUAL BACKGROUND</u>

### A. Overview of the Similarweb Directory

13. Defendants market their Similarweb website as a digital intelligence platform that analyzes internet traffic, audience behavior, and competitive data across websites and apps to help businesses make informed decisions about marketing, sales, and strategy.[5] A key part of its Sales Intelligence solution is the "Contacts" feature, which it describes as "a world-wide database of professional-contacts' information" that "enables sales teams to quickly and easily discover and connect with their prospects."[6] "Contacts allows users to segment leads by job title and department, search for specific contacts, and narrow-in on specific geographic locations."[7]

[55] *See* https://www.similarweb.com/blog/research/market-research/digital-intelligence/

[6] https://ir.similarweb.com/news-events/press-releases/detail/47/similarweb-dials-up-sales-intelligence-solution-with-integration-of-comprehensive-professional-contacts-database

[77] *Id.*

Similarweb operates as a data broker, gathering and then re-selling consumers' personal information. It provides a business-to-business people search function by compiling vast amounts of information about individuals from multiple sources, including publicly available information, its partners, "a leading data provider," and other third parties.[8]

14. The website similarweb.com functions as a free trial and subscription-based directory, allowing any member of the public to search for individuals from its "Contacts" database. For example, below is a screenshot of an example Similarweb shows on its website to demonstrate its Contacts search page:




[8] *Id.*

15. Plaintiff Gargus' contact information is accessible by members of the public who obtain a free trial on Similarweb. Below is a screenshot of how Plaintiff Gargus' information, including his wireless telephone number (redacted), appears on Similarweb after a name search:




16. Similarweb explicitly markets its platform as a resource for connecting with business contacts, including by "[d]irect dial or mobile number", advertising that it "provides access to **over 470 million business contacts** worldwide."[9] Below is Defendant's marketing on its website:




[9] https://support.similarweb.com/hc/en-us/articles/29736771096349-Find-the-Right-Contacts (emphasis in original)

17. The collection and dissemination of these personal details, including cell phone numbers, serves a vital commercial purpose for Similarweb. Data brokers like Similarweb generate income by selling access to and information about private citizens. This inherent commercial value of the data collected underscores the violation of the PTFA when consent is not obtained.

18. Defendant directly profits from its data publishing activities by selling subscription access for the ability to search for contact information—including cell phone numbers—about individuals, including Colorado residents. Selling individuals' contact information is the core of Similarweb's business model, notwithstanding the fact that it offers a limited free trial.

**B. Defendant's Conduct Harms Coloradans**

19. Similarweb's practices inflict tangible harm upon Colorado residents by undermining their privacy rights and exposing them to significant risks. The commercial value of consumer data is well-established, with the FTC recognizing that "data is currency" and larger datasets yield greater potential for analysis and profit.[10] By listing cell phone numbers without consent, Similarweb deprives Coloradans of the control over their personal data and its inherent economic value. Consumers are increasingly aware of this value and are willing to pay a premium for services that prioritize data protection.

20. In fact, individuals' private information has become such a valuable commodity that companies now offer individuals the opportunity to monetize their personal data.[11]

---

[10] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf

11 *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-

21. Defendant's misappropriation of Coloradans' cell phone numbers undeniably deprives state residents of the ability to enjoy their PTFA privacy rights. It also deprives them of the real, quantifiable value of such data.

22. Further, sites like Defendant's "offer a wealth of information that can be exploited by malicious actors."[12] For one, "[b]undling of personal data all together and making it so easily accessible … can put ordinary people at risk of … stalking and other forms of harassment."[13] Second, sites like Defendant's "comprehensive data allows cybercriminals to "build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[14] This puts "“put[s] almost anyone within the reach of fraudulent telemarketers”[]" and other wrongdoers.[15]

23. Information disclosures like Defendant's are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[16] The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[17]

---

usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.

12 https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

13 https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.

14 https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

15 http://www.nytimes.com/2007/05/20/business/20tele.html.

16 *Id.*

17 https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.

24. Making matters worse, "[o]nce marked as receptive to [a specific] type of spam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[18]

25. Defendant's collection and display of Coloradans' cell phone numbers without consent frustrates the legislative intent of the PTFA to safeguard privacy and protect consumers from telemarketing fraud.

**CLASS ALLEGATIONS**

26. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons in Colorado whose cellular telephone numbers were listed on Defendant's website, www.similarweb.com, during the applicable statute of limitations.

27. Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

28. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

29. The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

30. Numerosity: Class Members are so numerous that joinder of all members is impracticable. The Similarweb website boasts that Similarweb "provides access to **over 470**

[18] *Id.* at p. 3.

**million business contacts** worldwide."[19] On information and belief, the proposed class contains thousands of Colorado residents if not many more.

31. Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a) whether Defendant collected and publicly disseminated Plaintiff's and the Class's cellular telephone numbers;

b) whether Defendant unlawfully disclosed and continues to disclose its users' cellular telephone numbers in violation of the PTFA;

c) whether Defendant disclosed Plaintiff's and the Class's cellular telephone numbers without consent;

32. Typicality: Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, had his cellular telephone number collected and disclosed by Defendant, without his consent.

33. Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the PTFA claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be

[19] https://support.similarweb.com/hc/en-us/articles/29736771096349-Find-the-Right-Contacts (emphasis in original)

fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

34. The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a) The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b) The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c) When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d) This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e) Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f) This class action will assure uniformity of decisions among Class Members;

g) The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h) Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

35. Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

36. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

## COUNT I
## VIOLATION OF THE PREVENTION OF TELEMARKETING FRAUD ACT
## Colo. Rev. Stat. § 6-1-301, *et seq.*

37. Plaintiff incorporates the foregoing allegations as if fully set forth herein. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

38. Colo. Rev. Stat. § 6-1-304(4)(a) states that "[o]n or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly: (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing."

39. Defendant has failed to comply with this PTFA mandate. Similarweb knowingly lists Coloradans' cell phone numbers. The website similarweb.com clearly provides users with the ability to search for individuals and obtain phone numbers as part of its identity verification

subscription service. The very nature of the site and the App, which aggregate and display this data, demonstrates knowledge of the presence of cell phone numbers within its database.

40. Similarweb's website, similarweb.com, undeniably functions as a "directory." As defined, a directory is an "electronic resource containing lists of information … for example people's phone numbers or the names and addresses of businesses in a particular area."[20] Defendant's operations align with this definition, as it allows users to search for the names and phone numbers of business contacts in a structured manner.

41. Defendant engages in this conduct for a commercial purpose. Similarweb's business model is based on collecting and selling access to personal data, a commodity with inherent monetary value. Similarweb recognizes this fact; it charges for subscription access for its users to conduct name and phone number searches.

42. Defendant never requests nor receives Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing." Instead, Similarweb compiles and lists the cell phone numbers of Coloradans with whom it has no prior engagement, no connection, and who are often unaware of the site's existence or its unauthorized publication of their personal information.

43. Defendant's misappropriation of Class Members' personal data, including its economic value, has directly infringed upon Class Members' PTFA privacy rights. This deprivation extends to the real, quantifiable value of such data. Furthermore, it has exposed Class Members to elevated and unnecessary risks of stalking, harassment, scams, identity theft, and unwanted telemarketing solicitations.

---

[20] *See* Oxford Learner's Dictionary, *Directory*, https://www.oxfordlearnersdictionaries.com/us/definition/english/directory.33

44. Thus, on behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to comply with the PTFA; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a) Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel.

b) Declaring that Defendant's actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I).

c) Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense.

d) Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to comply with the PTFA.

e) Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

f) Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable.

g) Awarding such other and further relief as equity and justice may require.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all issues in this action so triable.

Respectfully Submitted,

Dated: May 11, 2026

CROSNER LEGAL, P.C.

By: s/ Adam C. York
Adam C. York

Adam C. York
adam@crosnerlegal.com
1021 West Adams St., Ste. 200
Chicago, Illinois 60607
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiff and the putative Class*